

5 Penn Plaza, 19th Floor
New York, New York 10001
212.835.1521

www.aguilarbentley.com

171 East Ridgewood Ave, Ste. 201
Ridgewood, New Jersey 07450
212.835.1521

Defendant shall file a response, not to exceed three pages, by **February 5, 2026**.  So Ordered.

Dated: January 29, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

January 28, 2026

**Via ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:    *Atlantic Specialty Ins. Co. v. Allied Gaming & Entertainment, Inc. et al.*,
No. 25-cv-08701-LGS – Pre-Motion Letter**

Dear Judge Schofield:

This firm represents Plaintiff Atlantic Specialty Insurance Company ("Atlantic").  Pursuant to Case Management Order (Doc. 18), Section 13(c)(i), Atlantic submits this pre-motion letter to advise the Court of its intent to file a motion for summary judgment.  Summary judgment is appropriate here because there is no genuine issue as to any material fact, and Atlantic is entitled to judgment as a matter of law.

## BACKGROUND

In 2024, Allied Gaming, its Board, and its largest shareholder, Ourgame, Inc., were twice named defendants in lawsuits in the Delaware Chancery Court filed by shareholder Knighted Pastures, LLC ("Knighted").  In both cases, Knighted sought to counteract self-dealing and dilutive transactions approved by the Allied Board, which Knighted alleged was dominated by directors tied to Ourgame.  The first lawsuit, brought in March 2024 (the "Initial Action"), was reported to Allied's insurance carries in its August 2023-August 2024 policy year, the primary carrier for which was XL Insurance Company.  The second lawsuit, brought in November 2024 (the "Underlying Action"), was reported to carriers in the August 2024-August 2025 policy year, which included XL as primary and Atlantic as excess carrier, with Atlantic's excess policy (the "Excess Policy") following form to the XL primary policy (the "XL Policy").  Defendants, thus, sought coverage from Atlantic for the Underlying Action, but not the Initial Action, which falls outside of Atlantic's policy period.

After receiving notice of the Underlying Action and conducting an analysis of the Initial Action and the Underlying Action, Atlantic filed its complaint in this case, seeking a declaration that it has no coverage obligations with respect to any loss by Defendants in the Underlying Action.  This is because the Underlying Action arose out of the same or related facts, circumstances, situations,

transactions or events as the Initial Action, such that the Underlying Action and the Initial Action constitute a single "Interrelated Claim" that arose in March 2024, outside the Atlantic policy period. Relatedly, because the Underlying Action is a claim based upon, arising out of, directly or indirectly resulting from or in any way involving facts that were the subject of notice prior to the Excess Policy's inception date, coverage is excluded under the Prior Notice Exclusion.

Defendants filed an answer and mirror-image counterclaims, asserting that they were entitled to coverage for the Underlying Action because the Initial Action and the Underlying Action were not an "Interrelated Claim," as each concerned different allegedly self-interested transactions by the Allied Gaming Board, which Defendants refer to as the "Elite Transaction" and the "Yellow River Transaction." The parties subsequently engaged in document discovery and are scheduled to appear before the Court for a conference on February 17, 2026 wherein any requests for pre-motion conferences are to be addressed.

## ARGUMENT

While Atlantic's Complaint points to two separate policy provisions supporting its argument for non-coverage – the Interrelated Claims provision and the Prior Notice Exclusion – the fundamental question in this case is whether the Initial Action and the Underlying Action are "interrelated," pursuant to the terms of the applicable policies. Here, the interrelatedness of the two actions cannot be denied, upon a comparison of the allegations in the relevant complaints, and the affirmative statements made by Knighted, XL, and even Allied Gaming itself.

**I.      Summary Judgment In Atlantic's Favor is Appropriate, Based Upon the Allegations in the Relevant Complaints.**

The XL Policy is broad and clear: Interrelated Claims are those arising from the same "Interrelated Wrongful Acts," defined as "any **Wrongful Acts**, based on, arising out of, directly or indirectly resulting from, in consequence of, or *in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events*." XL Policy §II(K) at Doc. 1-3 (emphasis added). Similarly, no coverage is available for any Claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or *in any way involving any fact, circumstance, situation, event or Wrongful Act," which before the Inception Date "was the subject of any notice given under any other" policy*. *Id.* at §III(B)(2).

Here, at minimum, the Initial Action and the Underlying Action "in some way involve" the "same or related facts, circumstances, situations, transactions or events." Indeed, a side-by-side, paragraph-by-paragraph comparison of the complaints in the two actions shows that the majority of the factual allegations in the two cases are the same, often word-for-word identical. Paragraph 1 of each complaint makes clear that the purpose of each action is identical: "to remedy" "flagrant breaches of fiduciary duty and misuse of the corporate machinery to undermine the stockholder franchise, entrench the incumbent directors in office and solidify [] control of the Company…" Doc. 1-4 ¶1; Doc. 1-5 ¶1. Paragraph by paragraph, the duplication carries on from there. In addition, the two cases were brought by the same plaintiff, against Allied and its directors, as well as Ourgame, with both alleging claims for breach of fiduciary duty and aiding and abetting.

Given the broad language of the XL Policy, coupled with the obvious fact that the two complaints are related to one another, the two cases are plainly Interrelated Claims, as has been held

2

in similar cases.  *See, e.g., Zunenshine v. Exec. Risk Indem., Inc.*, 1999 U.S. App. LEXIS 14629, at *
4-5 (2d Cir. 1999) (considering similar policy language to conclude "it is immaterial" if the two
lawsuits involved "different parties or somewhat different legal harms," or "involved a series of
additional misrepresentations. . . . because the exclusions apply if the [underlying litigation was]
based on *any* fact underlying the [prior] litigation).

II.    **Summary Judgment in Atlantic's Favor is Appropriate, Based Upon Statements by
Knighted, XL, and Allied Gaming Itself Attesting to the Interrelatedness of the Two
Actions.**

Summary judgment is also supported by documents revealing that Knighted, XL, and even
Allied itself view the two matters as interrelated.  Throughout the complaint in the Underlying
Action, Knighted attests to its connections to the Initial Action, noting, by way of example, that
"[b]oth the details and timing of the Elite and Yellow River Transactions are remarkably similar,
demonstrating that they were driven by the same underlying improper purpose of benefiting one
shareholder, and the directors affiliated with it," and that "Defendants' approval of the Yellow River
Transaction is the latest in a long line of actions of attempted entrenchment and is no more than Elite
Transaction, version 2.0."  Doc. 1-5  ¶¶81, 89.

XL, the primary carrier, reviewed its own policy language to determine that that two actions
were interrelated, writing that they "arise out of Interrelated Wrongful Acts," and XL will "[t]reat the
matters as a single Claim subject to a single retention."  Doc. 1-2 ¶ 50.

Finally, Allied Gaming has repeatedly, in public and discovery documents, characterized the
Initial Action and the Underlying Action as an overarching "scheme" or "multi-faceted" and
"unequivocal campaign," where the tactics used include the filing of the two lawsuits at issue.  Docs.
1-7, 1-8, 1-9, 1-10.  Documents produced in discovery also make clear that Allied Gaming and its
broker were expecting its carriers to point to the interrelatedness of the Underlying Action and the
Initial Action from its filing.

**CONCLUSION**

Atlantic respectfully requests that the Court set a briefing schedule for Atlantic's anticipated
motion for summary judgment.

Respectfully submitted,

*Lisa Bentley*

Lisa Bentley

3